# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION, | : | CIVIL ACTION NO. 1:09-CV-1330 |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| SEAN NATHAN HEALY, | : | |
| Defendant | : | |
| | : | |
| and | : | |
| | : | |
| SHALESE RANIA HEALY and SAND DOLLAR INVESTING PARTNERS, LLC, | : | |
| Relief Defendants | : | |

-------------------------------------------------------------------------

| | | |
|---|---|---|
| U.S. COMMODITY AND FUTURES TRADING COMMISSION, | : | CIVIL ACTION NO. 1:09-CV-1331 |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| SEAN NATHAN HEALY, | : | |
| Defendant | : | |
| | : | |
| and | : | |
| | : | |
| SHALESE RANIA HEALY and SAND DOLLAR INVESTING PARTNERS, LLC, | : | |
| Relief Defendants | : | |

# **ORDER**

AND NOW, this 21st day of October, 2009, upon consideration of the motion for an order providing the receiver with sole possession of the Riviera Manor Property (U.S. Securities and Exchange Commission v. Healy, Civ. A. No. 1:09-CV-1330 (M.D. Pa. filed July 12, 2009) [hereinafter Case No. 1330], Doc. 39; U.S.

Commodity and Futures Trading Commission v. Healy, Civ. A. No. 1:09-CV-1331 (M.D. Pa filed July 12, 2009) [hereinafter Case No. 1331], Doc. 34), filed by the court-appointed receiver, Melanie E. Damian, Esq. (the "receiver"), and upon further consideration of defendant and relief defendants' opposition (Case No. 1330, Doc. 46; Case No. 1331, Doc. 41) to the receiver's motion, and it appearing that the receiver seeks sole possession of the property located at 2672 Riviera Manor, Weston, Florida (the "property" or the "residence"), and of its contents, improvements, upgrades, furniture, and fixtures, pursuant to the court's temporary restraining orders ("TROs") and preliminary injunctions[1] (See Case No. 1330, Doc.

---

[1] Defendant and relief defendants argue that the receiver should not be entitled to take sole possession of the property on the basis that the receiver's purpose and the purpose of the court's preliminary injunctions is merely to preserve the status quo. (Case No. 1330, Doc. 46 at 5-9; Case No. 1331, Doc. 41 at 5-9.) They insist that the condition of the property has remained unchanged while the Healy family resides on it. (Case No. 1330, Doc. 46 at 3-5; Case No. 1331, Doc. 41 at 3-5.) They argue that the family should therefore be permitted to continue residing on it until there is a determination on the merits. (Case No. 1330, Doc. 46 at 6-9; Case No. 1331, Doc. 41 at 6-9.)

While it may be true that the Healy family has preserved the condition of the property, the court cannot agree that this is synonymous with preserving the status quo. As the court discusses infra, note 3, the costs that accompany the family's occupation of the residence exceed the costs of maintaining an unoccupied residence. These excess costs deplete the estate's assets; therefore, the Healy's occupation of the property does not maintain the status quo.

Nor is the court convinced that granting the receiver sole possession of the property would expand the purpose of her appointment or the purpose of the preliminary injunction. To the contrary, when the court appointed the receiver, it authorized her to take possession of the property, and it explicitly contemplated that, upon some future order, the Healy family would no longer be permitted to reside at the property. (See Case No. 1330, Doc. 12 at 25-26.) Furthermore, the court's prior orders explicitly direct counsel for the parties to attempt to reach agreement on a date for the Healy family to vacate the residence. (Case No. 1330, Doc. 21 at 7; Case No. 1331, Doc. 19 at 7.)

12, 21; Case No. 1331, Doc. 14, 19), and that the receiver contends that the Healy family has no right to occupy the residence,[2] and that the Healy family's continued occupation of said property may diminish the property's value and will deplete assets of the estate of Sean Healy and of certain assets of relief defendants (the

---

[2] According to the receiver, it is "indisputable" that the Healys used investor funds to purchase the Riviera Manor property, and she "would be derelict in her duties if she did not seek sole possession of the house" in light of the evidence establishing that fact. (Case No. 1330, Doc. 39 at 5-7; Case No. 1331, Doc. 34 at 5-7.) Neither the defendant nor the relief defendants have attempted to dispute this assertion or present proof that the Healys purchased the house with other funds.

Defendant and relief defendants contend that the Healy family is entitled to remain in possession of the property under the homestead protection under the Florida Constitution. (Case No. 1330, Doc. 46 at 9-10; Case No. 1331, Doc. 41 at 9-10.) This provision generally exempts a homestead from forced sale or lien. FLA. CONST. art. X, § 4(a). The receiver, however, presents clear guidance from Florida courts, and from federal courts interpreting Florida's homestead protection, that the homestead protection cannot be invoked to protect a home purchased with fraudulently obtained funds. (Case No. 1330, Doc. 39 at 9-10, Doc. 57 at 8; Case No. 1331, Doc. 34 at 9-10, Doc. 51 at 8.) See, e.g., In re Fin. Federated Title & Trust, 347 F.3d 880 (11th Cir. 2003) ("[W]e conclude that Appellants purchased their home with fraudulently obtained funds and that the Florida Constitution does not protect Appellants' homestead property from an equitable lien or constructive trust . . . ."). In reliance on this authority, and in light of the Healys' failure to contend that they purchased it with anything other than fraudulently-obtained investor funds, the court is persuaded that the homestead protection does not apply to the property at issue in this case.

3

"estate"),[3] and that the Healys have failed to "make a good faith effort" to comply with the court's orders,[4] and the court concluding that the receiver is entitled to

---

[3] Asserting that the cost of maintaining the property while the Healy family occupies it is excessive, the receiver seeks sole possession of the residence. (Case No. 1330, Doc. 39 at 3-4; Case No. 1331, Doc. 34 at 3-4.) Defendant and relief defendants invite the court to reject the receiver's argument. (Case No. 1330, Doc. 46 at 10-12; Case No. 1331, Doc. 41 at 10-12.) The court declines to do so. Although defendants accurately observe that certain property expenses will continue during the pendency of the litigation even if the house is unoccupied, (Case No. 1330, Doc. 46 at 11; Case No. 1331, Doc. 41 at 11), they have failed to rebut the receiver's argument that "[p]owering the home down to the bare minimum . . . would save the Estate a significant sum." (Case No. 1330, Doc. 39 at 4; Case No. 1331, Doc. 34 at 4.) The court is also persuaded that the receiver could reduce the cost of security and surveillance if she had sole possession of the property. (Case No. 1330, Doc. 57 at 10; Case No. 1331, Doc. 51 at 10.)

[4] In support of this argument, the receiver claims that the Healys have "refused to provide an accounting of their assets," "refused to provide any subpoenaed documents or answer any questions under oath," "failed to turn over to the Receiver five pieces (at least) of valuable jewelry appraised for approximately $350,000," and that "among the jewelry that the Healys did turn over to the receiver were [two pieces] which subsequently were inspected by the Receiver's jewelry expert and determined to be a fake." (Case No. 1330, Doc. 39 at 7-9; Case No. 1331, Doc. 34 at 7-9.) Defendant and relief defendants argue that the issue of the five missing pieces of jewelry is "wholly unrelated" to the question of whether the Healy family should remain in the residence, and they offer no response to the receiver's other allegations of noncompliance. (Case No. 1330, Doc. 46 at 12; Case No. 1331, Doc. 41 at 12.) The court does not rely on the Healys' past failures to comply with the court's orders to reach its conclusion that the receiver is entitled to take sole possession of the property. Nevertheless, the court recounts this history here because it diminishes any hesitation that the court might have otherwise had to remove the Healy family from the property.

4

take sole possession of the property,[5] see 28 U.S.C. § 959(b) ("[A] trustee, receiver or manager appointed in any cause pending in any court of the United States . . . shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."), and that neither the defendant nor the relief defendant has persuaded the court that the Healy family has a right to remain in the residence, but that the receiver has failed to identify items inside the residence over which she seeks possession or to establish that all such items are assets or property of the defendant or the relief defendants,[6] it is hereby ORDERED that the receiver's motion (Case No. 1330, Doc. 39; Case No. 1331, Doc. 34) is GRANTED in part and DENIED in part as follows:

---

[5] For the reasons discussed supra, note 1, the court rejects defendant's contention that granting the receiver sole possession of the residence at this stage of the litigation would expand the purpose for which the receiver was appointed. Defendant and relief defendants also request that the court deny the receiver's motion because her filing fails to comply with the Local Rules of the court in trivial respects. (Case No. 1330, Doc. 46 at 14-15; Case No. 1331, Doc. 41 at 14-15.) This argument is unpersuasive. The court holds the receiver to the same pleading standards as all other litigants, but it is not inclined to dispose of the receiver's motion on the basis of such minutiae.

[6] One of the court's TROs authorized the receiver to take possession of all "real or personal property, wherever located, of or managed by Defendant or Relief Defendants . . . ." (Case No. 1331, Doc. 14 at 6.) The other TRO classifies certain assets of the relief defendants as "recoverable," but it does not explicitly authorize the receiver to take possession of all of the relief defendants' property. (Case No. 1330, Doc. 12 at 18.) The court later extended both TROs and converted them to preliminary injunctions in virtually all respects, with certain modifications not relevant here. (See Case No. 1330, Doc. 21 at 3-4; Case No. 1331, Doc. 19 at 8.)

5

1. The receiver is authorized to take exclusive possession of the property by November 30, 2009.

2. The Healy family is ordered to vacate the property by November 30, 2009, and turn it and all of its improvements, upgrades, and fixtures over to the receiver without damaging or otherwise diminishing the value thereof.

3. The receiver is ordered to submit to the court, on or before November 4, 2009, a memorandum identifying such furniture in the property or contents of the property that the receiver contends are recoverable assets and establishing her entitlement to take possession of such items. Defendant and relief defendants shall be permitted to file a responsive memorandum on or before November 16, 2009, and the receiver shall be permitted to file a reply to such responsive memorandum on or before November 23, 2009.

4. All provisions of the court's preliminary injunctions (Case No. 1330, Doc. 21; Case No. 1331, Doc. 19) and applicable provisions of the court's TROs (Case No. 1330, Doc. 12; Case No. 1331, Doc. 14) remain in effect, except as modified herein.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge