FILED
HARRISBURG, PA

JUN 2 2 2010

MARY E. D'ANDREA, CLERK
Per_____
Deputy Clerk

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
## HARRISBURG DIVISION

|  |  |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 1:09-cv-1331 ) Judge ~~Connor~~ Conner |
| SEAN NATHAN HEALY, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| SHALESE RANIA HEALY and SAND DOLLAR INVESTING PARTNERS, LLC, | ) ) ) ) ) |
| Relief Defendants. | ) ) |

## CONSENT ORDER OF PERMANENT INJUNCTION, DISGORGEMENT, CIVIL MONETARY PENALTY, AND EQUITABLE RELIEF AGAINST DEFENDANT SEAN NATHAN HEALY AND RELIEF DEFENDANT <u>SAND DOLLAR INVESTING PARTNERS, LLC</u>

# I.

## BACKGROUND

On July 13, 2009, the Commodity Futures Trading Commission (Plaintiff or CFTC) filed its Complaint for Permanent Injunction, Civil Monetary Penalties, and Other Equitable Relief (Complaint) in the above-captioned action against Defendant Sean Nathan Healy (Sean Healy or Defendant) and Relief Defendants Shalese Rania Healy (Shalese Healy) and Sand Dollar Investing Partners, LLC (Sand Dollar) (collectively, Relief Defendants), in which the CFTC sought injunctive and other equitable relief for violations of the Commodity Exchange Act (the Act), 7 U.S.C. §§ 1 *et seq.* (2006), for conduct that occurred before June 18, 2008; the Act, as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 (CRA)), § 13102, 122 Stat. 1651 (enacted June 18, 2008), for conduct that occurred on or after June 18, 2008, to be codified at 7 U.S.C. §§ 1 *et seq.*; and the CFTC Regulations (Regulations) promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2009). On that same day, pursuant to the CFTC's filing, the Court issued a Statutory Restraining Order freezing the assets of Sean Healy, Shalese Healy, and Sand Dollar, preserving their books and records, and appointing Melanie E. Damian, of the firm Damian & Valori, LLP, as the Receiver of the Estates of Sean Nathan

Healy, Shalese Rania Healy and Sand Dollar Investing Partners, LLC (the Receivership Estate).

## II.

## CONSENTS AND AGREEMENTS

Solely to effect settlement of the matters alleged in the Complaint in this action without a trial on the merits, any further judicial proceedings, or presentation of any additional evidence, Defendant and Relief Defendant Sand Dollar:

1.    Consent to the entry of this Consent Order of Permanent Injunction and Other Equitable Relief (the Consent Order);

2.    Affirm that they have read and agreed to this Consent Order voluntarily, and that no threat or promise has been made by the CFTC or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order, other than as set forth specifically herein;

3.    Acknowledge service of the Summons and Complaint;

4.    Admit that this Court has jurisdiction over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006);

5.    Admit that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006);

6.    Waive:

a.    Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or Part 148 of the Regulations, 17 C.F.R. §§ 148.1, *et seq.* (2009), relating to, or arising from, this action;

b.    Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No.104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to or arising from this action;

c.    Any claim that they may possess of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and

d.    Any and all rights of appeal from this action;

7.    Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against him or any other person in any other proceeding;

8.    In consenting to the entry of this Consent Order, Defendant admits the allegations of the Complaint and the Findings of Fact and Conclusions of Law contained in this Consent Order.  Relief Defendant Sand Dollar neither admits nor

4

denies the allegations of the Complaint or the Findings of Fact and Conclusions of Law contained in this Consent Order, except as to jurisdiction and venue, which it admits;

9.    Agree and intend that all of the allegations of the Complaint and all of the Findings of Fact and Conclusions of Law made by this Court and contained in Part III of this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: (1) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Defendant or Relief Defendant Sand Dollar; (2) a proceeding to enforce this Consent Order; and (3) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a(1), and/or Part 3 of the Regulations, 17 C.F.R. §§ 3.1 *et seq.*;

10.    Shall provide immediate notice to this Court and the CFTC of any bankruptcy proceeding filed by, on behalf of, or against any of them, and shall provide immediate notice of any change of address, phone number, or contact information, via certified mail in the manner required by Section VI. paragraph 73 of this Consent Order;

11.    Consent to the continued jurisdiction of this Court over them for the purpose of enforcing the terms and conditions of this Consent Order and for any

other purpose relevant to this action, even if Defendant or Relief Defendant Sand Dollar now or in the future resides outside the jurisdiction; and

12.    Agree that neither Defendant, Relief Defendant Sand Dollar, nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings or conclusions in this Consent Order, or creating, or tending to create, the impression that the Complaint or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect Defendant's or Relief Defendant Sand Dollar's (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the CFTC is not a party. Defendant and Relief Defendant Sand Dollar shall take all necessary steps to ensure that all of their agents and employees under their authority or control understand and comply with this agreement.

## III.

## FINDINGS AND CONCLUSIONS

### A.    Jurisdiction and Venue

13.    This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), which provides that whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any

act or practice constituting a violation of any provision of the Act; the Act, as amended by the CRA; or the Regulations, the CFTC may bring an action in the proper district court of the United States against such person to enjoin such practice, or to enforce compliance with the Act; the Act, as amended by the CRA; and the Regulations.

14.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), because the acts and practices in violation of the Act; the Act, as amended by the CRA; and the Regulations occurred and have occurred within this District.

## B.     Parties to the Consent Order

15.     Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1 *et seq.* (2006), as amended by the CRA, to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Regulations, promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2009).

16.     Defendant **Sean Nathan Healy** resided in Weston, Florida.  He was a self-described day trader of futures, options, and securities.  He has never been registered with the CFTC in any capacity.

17.     Relief Defendant **Sand Dollar Investing Partners, LLC**, was a

Nevada limited liability company, formed on or about July 21, 2008 as a result of a

joint venture agreement between Sean Healy and Alfred L. Madeira (Madeira),

Sand Dollar's sole members. At the time of its formation, Sand Dollar's registered

address was Madeira's home address in Chambersburg, Pennsylvania. Defendant

used the Sand Dollar entity to title several of the vehicles he purchased with

investor funds and caused Sand Dollar to lease warehouse space in which to store

the luxury vehicles he purchased using investor funds. Sand Dollar has never been

registered with the CFTC in any capacity.

## C.     Factual Background

18.     Sean Healy and Madeira have been acquainted since approximately

2000. In or around April 2008, Sean Healy contacted Madeira with the purpose of

soliciting Madeira to invest his funds with Sean Healy. Specifically, Sean Healy

represented to Madeira that he was a successful day trader of futures, options, and

securities.

19.     From approximately June to August 2008, based on Sean Healy's

representations to Madeira of Sean Healy's purported trading success, Madeira, at

Sean Healy's instructions, forwarded approximately $1.2 million to

Shalese Healy's Bank of America account.[1] Madeira transmitted these funds with the understanding that Sean Healy would purchase, among other things, certain oil and gold futures and/or options contracts on behalf of Madeira and, perhaps, other individuals. On or about June 18, 2008, Sean Healy faxed to Madeira a handwritten letter representing that Sean Healy had executed, among other things, certain gold and oil futures and/or options trades on Madeira's behalf.

20.    On or about June 30, 2008, Sean Healy faxed to Madeira a handwritten letter representing that the oil futures and/or options contracts that Sean Healy had executed on behalf of himself and Madeira had been extremely successful, resulting in a profit of over $1.1 million for each of them.

21.    On or about July 1, 2008, Sean Healy faxed to Madeira a handwritten letter representing that certain additional oil futures and/or options trades

---

[1] At all times relevant to this Factual Background, Relief Defendant Shalese Rania Healy—wife of Defendant—resided in Weston, Florida. Defendant and Shalese Healy maintained all (or nearly all) their assets in Shalese Healy's name. As explained below, Sean Healy directed or otherwise caused all funds received from Madeira, as well as from friends, acquaintances, and business associates of Madeira and Madeira's attorney, Dillsburg, Pennsylvania resident Thomas Ahrens (Ahrens) (collectively, the Madeira Investors) to be deposited into Shalese Healy's Bank of America account, for which she had sole signatory authority. She is also the sole owner of a $2.4 million home in Weston, Florida that was purchased with misappropriated investor funds. Further, between October 2008 and January 2009, numerous luxury vehicles were titled in her name. During this time, Shalese Healy was not employed and had no known sources of income other than the funds she received from and on behalf of her husband.

Sean Healy had executed on behalf of himself and Madeira also had been extremely successful, resulting in approximately $1.2 million in "gross value" for each of them.

22.     In addition to the handwritten letters, Sean Healy called Madeira numerous times conveying that he had achieved certain trading successes. For example, Sean Healy said, on one particular occasion, "[a]t times, this is almost too easy...there's times and this is one of the few times in your life that you're going to see oil go up like this, therefore, you have to take advantage of the opportunity because this only happens like [sic] a once in a lifetime."

23.     At some point after Madeira initially invested his funds with Sean Healy, they discussed the possibility of additional investments by Madeira and investments from third parties. With the prospect of receiving additional funds, particularly funds from third parties, for additional futures and options trades, Sean Healy suggested to Madeira the formation of Sand Dollar, which would be used to conduct the actual trading. Sand Dollar, however, never conducted any futures or options trading.

24.     In early August, 2008, Madeira met Sean Healy in person in Hollywood, Florida. During these meetings, Sean Healy represented to Madeira that Sean Healy's trading account, placed with a broker Sean Healy referred to

only as "Andy" (Andy Account), had a value of more than $79 million as of August 6, 2008. Madeira was supposedly entitled to fifty percent of this amount. According to Sean Healy, however, the Andy Account had a 90-day trading restriction imposed upon it by regulators because of a technically improper trade conducted by Sean Healy; therefore, Sean Healy told Madeira that the distribution on any gains in the Andy Account would occur on or about February 1, 2009.

25.    Shortly after Sean Healy told Madeira of the purported extraordinary profits they had earned, Sean Healy told Madeira that he had a connection with a commodities trader, identified as "Matt," who could turn $1.5 million into $16 million by trading gold futures and/or options.

26.    Enticed by this prospect and Sean Healy's supposed extraordinary trading success, Madeira and Ahrens raised an additional, approximately $13.4 million from the Madeira Investors, giving that money to Sean Healy to use to trade futures and options. Madeira Investors' funds were supposedly held in an account traded by Matt (Matt Account).

27.    In or about December 2008, Sean Healy told Madeira that the Andy Account was transferred to Matt's firm, supposedly to ease custodial arrangements. After the purported transfer, Matt's firm supposedly held the Andy Account, the Matt Account, and a third account that invested in financial products other than

futures and options. The purported aggregate value of these three accounts was $160 million.

28. At no time did Sean Healy provide any account statements or identifying information regarding the accounts purportedly traded by Matt to Madeira or the Madeira Investors.

29. As the February 1, 2009 supposed distribution deadline passed, Madeira arranged a meeting with Sean Healy to discuss the failure to distribute the owed funds. On or about February 11, 2009, Sean Healy assured Madeira that the accounts would be "cleared" and the accounts would be available for distribution on March 2, 2009.

30. On or about March 2, 2009, Sean Healy informed Madeira that there would be no distribution that day, that certain transactions in one of the three accounts purportedly held by Matt were "still open," and that regulators required that certain additional steps be taken with respect to the accounts, which he claimed would be completed several days thereafter.

31. Sean Healy told Madeira that the estimated value of the Matt Account would be affected by open issues regarding trades within that account, but approximately $30-40 million would be available for distribution on or about

March 5, 2009. Sean Healy claimed that the issues in the Matt Account had no effect on either the Andy Account or the third account.

32. On or about March 5, 2009, despite the prior representations of extraordinary gains, Sean Healy informed Madeira that Madeira should not expect distributions of any purported gain in any of the accounts, and any reimbursement of principal would come from Matt's firm.

33. Only a small fraction of the investors' principal provided to Sean Healy (and no purported gains) were ever returned to Madeira and the Madeira Investors. The futures and options trading purportedly conducted by or at the direction of Sean Healy did not occur at all, and the oral and written representations made by Sean Healy to Madeira regarding purported trading activity and purported trading success were false.

34. During the time that Madeira, per Sean Healy's instructions, was sending money to Shalese Healy's Bank of America account, Sean Healy and Shalese Healy used money from that account to purchase numerous luxury vehicles, a lease for 2,500 square feet of garage space to store the vehicles, approximately $1.4 million worth of jewelry, gold bullion, leases on luxury suites at the AmericanAirlines Arena and the BankAtlantic Center, a $2.4 million home, and approximately $2 million in home furnishings and home improvements,

including a $500,000 home movie theater. None of the money Sean Healy

received from Madeira was ever transferred to any brokerage or commodities

trading firm.

35. Sean Healy knew that his numerous oral and written statements to

Madeira regarding his trading activity and profitability were false because he knew

that he was misappropriating Madeira's and the Madeira Investors' funds. Further,

Sean Healy failed to disclose material information to Madeira and the Madeira

Investors, including, but not limited to, the fact that Sean Healy was not trading

their funds but rather misappropriating such funds. In addition, Sean Healy knew

that by omitting such material information he deceived Madeira and the Madeira

Investors.

36. Sean Healy used the Sand Dollar entity to title several of the vehicles

he purchased with investor funds and caused Sand Dollar to lease warehouse space

in which to store the luxury vehicles he purchased using investor funds.

37. Madeira filed an action captioned, *Madeira v. Healy*, in the U.S.

District Court for the Southern District of Florida and contacted the United States

Attorney's Office for the Middle District of Pennsylvania (USAO). Sean Healy

furnished falsified documents to the USAO in response to inquiries, including

fictitious bank records and brokerage account records from a representative named

"Mike Hein" at a firm called "PCF" and for an account he claims to have

maintained at Interactive Brokers (Interactive), a futures commission merchant

(FCM) registered with the CFTC.

38.     PCF is not a registered futures trading firm or broker-dealer.  The

purported address on the documents produced to the USAO—"398 Lafeyete Street,

New York, NY"—is nonexistent.  Likewise, there is no record of any registered

representative by the name of "Mike Hein" or "Michael Hein" at any firm

registered with the CFTC or the U.S. Securities and Exchange Commission (SEC).

39.     Further, the detail contained in the Interactive records Sean Healy

produced to the USAO consisted of activity from two Interactive accounts that

have no relationship or connection with Sean Healy or entities associated with

Sean Healy.

## D.     Conclusions of Law

### 1.  Fraud in Connection with Futures

40.     With respect to conduct occurring prior to June 18, 2008,

Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii) (2006), made it

unlawful

> for any person, in or in connection with any order to make, or the
> making of any contract of sale of any commodity for future delivery,
> made or to be made, for or on behalf of any other person if such

contract for future delivery is or may be used for (A) hedging any transaction in interstate commerce in such commodity, or the products or byproducts thereof, or (B) determining the price basis of any transaction in interstate commerce in such commodity, or (C) delivering any such commodity sold, shipped or received in interstate commerce for the fulfillment thereof –

> (i) to cheat or defraud or attempt to cheat or defraud such other person;
> (ii) willfully to make or caused to be made to such other person any false report or statement thereof, or willfully to enter or caused to be entered for such other person any false record thereof;
> (iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person.

41.    With respect to conduct occurring on or after June 18, 2008,

Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified at

7 U.S.C. § 6b(a)(1)(A)-(C), makes it unlawful

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person–(A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency

performed, with respect to any order or contract for ... the other person.

42.     Beginning in at least May 2008 and continuing through at least March 2009, Defendant (1) misappropriated funds received from Madeira and the Madeira Investors for the purpose of trading futures; (2) solicited investments for futures through fraudulent, material misrepresentations and omissions, including, among other things, misrepresentations and omissions regarding Defendant's past and current trading performance and trading activity; and (3) made or caused to be made false reports or statements to Madeira and the Madeira investors who invested money with Defendant to trade futures, all in violation of Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii) (2006), with respect to acts or omissions occurring before June 18, 2008, and in violation of Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A)-(C), with respect to acts or omissions occurring on or after June 18, 2008.

43.     Defendant engaged in the acts and practices described above knowingly.

44.     Sand Dollar is a Relief Defendant because it received ill-gotten gains from Defendant's fraud to which it was not entitled.  Defendant used the Sand Dollar entity to title several of the luxury vehicles he purchased with investor

17

funds. Further, Defendant caused Sand Dollar to lease, with investor funds,

warehouse space in which to store the luxury vehicles he purchased using investor

funds.

### 2. **Fraud in Connection with Option Contracts**

45.    Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2006), makes it unlawful to

offer to enter into, enter into or confirm the execution of, any
transaction involving any commodity regulated under th[e] Act which
is of the character of, or is commonly known to the trade as, an
"option", "privilege", "indemnity", "bid", "offer", "put", "call",
"advance guaranty", or "decline guaranty", contrary to any rule,
regulation, or order of the C[FTC] prohibiting any such transaction or
allowing any such transaction under such terms and conditions as the
C[FTC] shall prescribe.

46.    Regulation 33.10, 17 C.F.R. § 33.10 (2009), makes it

unlawful for any person directly or indirectly—(a) [t]o cheat or
defraud or attempt to cheat or defraud any other person; (b) [t]o make
or cause to be made to any other person any false report or statement
thereof or cause to be entered for any person any false record thereof;
(c) [t]o deceive or attempt to deceive any other person by any means
whatsoever in or in connection with an offer to enter into, the entry
into, the confirmation of the execution of, or the maintenance of, any
commodity option transaction.

47.    Defendant, in or in connection with offers to enter into, the entry into,

the confirmation of the execution of and the maintenance of options transactions:

(1) misappropriated funds received from Madeira and the Madeira investors for the

purpose of trading options; (2) solicited investments for options through

fraudulent, material misrepresentations and omissions, including, among other things, misrepresentations and omissions regarding Defendant's past and current trading performance and trading activity; and (3) made or caused to be made false reports or statements to Madeira and the Madeira Investors who invested money with Defendant to trade options, all in violation of Section 4c(b) of the Act. 7 U.S.C. § 6c(b) (2006), and Regulation 33.10(a)-(c), 17 C.F.R. §33.10(a)-(c) (2009).

48.     Sand Dollar is a Relief Defendant because it received ill-gotten gains from Defendant's fraud to which it was not entitled.  Defendant used the Sand Dollar entity to title several of the luxury vehicles he purchased with investor funds.  Further, Defendant caused Sand Dollar to lease, with investor funds, warehouse space in which to store the luxury vehicles he purchased using investor funds.

## IV.

## ORDER FOR PERMANENT INJUNCTION

## IT IS NOW HEREBY ORDERED THAT:

49.     Defendant is permanently restrained, enjoined, and prohibited from, directly or indirectly, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery

that is made, or to be made, on or subject to the rules of a designated contract

market, for or on behalf of any other person:

      a.    cheating or defrauding or attempting to cheat or defraud other

persons;

      b.    willfully making or causing to be made to such other person

any false report or false statement or willfully entering or causing to be

entered for others any false record; and/or

      c.    willfully deceiving or attempting to deceive any other persons

by any means whatsoever in regard to any such order or contract or the

disposition or execution of any such order or contract, or in regard to any act

of agency performed with respect to such order or contract for such persons,

in violation of Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be

codified at 7 U.S.C. § 6b(a)(1)(A)-(C).

50.    Defendant is permanently restrained, enjoined, and prohibited from,

directly or indirectly:

      a.    Offering to enter into, entering into, executing, confirming the

execution of, or conducting business for the purpose of soliciting, accepting

any order for, or otherwise dealing in any transaction in, or in connection

with, a commodity option contrary to any rule, regulation, or order of the

CFTC prohibiting any such transaction or allowing any such transaction under such terms and conditions as the CFTC shall prescribe, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2006); and

b.    In or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, or the maintenance of, any commodity option transaction, cheating or defrauding or attempting to cheat or defraud any other person; making or causing to be made to any other person any false report or statement thereof or causing to be entered for any person any false record thereof; or deceiving or attempting to deceive any person by any means whatsoever, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2006), and Regulations 33.10(a)-(c), 17 C.F.R. §§ 33.10(a)-(c) (2009).

51.    Defendant is permanently restrained, enjoined, and prohibited from engaging, directly or indirectly:

a.    trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29));

b.    entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended by

the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts"), for their own personal account or for any account in which they have a direct or indirect interest;

c. having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

d. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

e. soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

f. applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009); and

g. acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer or

employee of any person registered, exempted from registration or required to be registered with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009).

52.     The injunctive provisions of this Consent Order shall be binding upon Defendant, upon any person who acts in the capacity of officer, agent, servant, employee, or attorney, successor and/or assign of Defendant, and upon any person who receives actual notice of this Consent Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Defendant.

## V.

## ORDER FOR DISGORGEMENT, CIVIL MONETARY PENALTY, AND OTHER ANCILLARY RELIEF

**IT IS NOW HEREBY ORDERED THAT:**

Defendant shall comply fully with the following terms, conditions, and obligations relating to the payment of disgorgement, the payment of a civil monetary penalty, and other ancillary relief.

**A.     Return of Funds to Investors**

53.     On July 13, 2009, Melanie E. Damian, Esq. was appointed Receiver for the Estate of Sean Healy and for certain assets of Shalese Healy and Sand Dollar.  Pursuant to this Court's *Order Granting Plaintiff's Ex Parte Emergency*

*Motion for Statutory Restraining Order, Expedited Discovery, Preliminary Injunction, and Other Equitable Relief* [D.E. 14], which was modified and extended by this Court's July 20, 2009 *Consent Order of Preliminary Injunction and for Other Equitable Relief Against Defendant Sean Nathan Healy* [D.E. 19], the Receiver, to date, has taken possession of over $500,000 in liquid assets held on deposit in domestic banks and is in the process of liquidating real and personal property for the benefit of the receivership estate held in the names of Defendant and Relief Defendants. The funds derived from the sale or liquidation of these assets, along with any interest earned on these funds, should be returned to Defendant's investors (less any court-approved fees and expenses incurred or to be incurred by the Receiver), and shall satisfy, in full or in part, Defendant's and Relief Defendant Sand Dollar's disgorgement obligations as set forth below in Part V.B. of this Consent Order. The Court orders that these funds be distributed to Defendant's investors pursuant to and consistent with the distribution plan ultimately approved by this Court,[2] and that Defendant's and Relief Defendant Sand Dollar's rights, if any, to these funds be extinguished.

---

[2] This distribution plan will address not only amounts owed to investors as part of the fraudulent scheme alleged by the CFTC, but also amounts owed to investors as part of the fraudulent scheme alleged by the SEC in its related action filed in this Court on July 13, 2009 (Case No. 1:09-CV-1330). The Receiver was appointed with respect to both actions.

**B.    Disgorgement**

54.    Defendant shall pay disgorgement in the amount of $14,637,000, plus post-judgment interest.  All disgorgement payments are immediately due and owing.

55.    Relief Defendant Sand Dollar shall disgorge any funds that are obtained by the Receiver and derived from the sale of property held in Sand Dollar's name.

56.    Post-judgment interest shall accrue beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order, pursuant to 28 U.S.C. § 1961(a).

57.    Any amount paid to one of Defendant's investors pursuant to this Consent Order shall not limit the ability of that investor to independently prove in a separate action that a greater amount is owed from any person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any investor that exist under federal, state, or common law to assert a claim for recovery against Defendant subject to any offset or credit that Defendant may be entitled to claim under the law governing that investor's claim.  Pursuant to

Rule 71 of the Federal Rules of Civil Procedure, each investor is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the disgorgement amount that has not been paid, to ensure compliance with any provision of this Consent Order, and to hold Defendant in contempt for any violations of any provision of this Consent Order.

58.     To effect payment by Defendant and Relief Defendant Sand Dollar and distribution of disgorgement, the Court orders that these funds be distributed to Defendant's investors pursuant to and consistent with the Receiver's distribution plan ultimately approved by this Court.

59.     Defendant and Relief Defendant Sand Dollar shall cooperate with the Receiver as appropriate to provide such information as the Receiver deems necessary and appropriate to identify Healy investors to whom the Receiver, in its sole discretion, may determine to include in any plan for distribution of any disgorgement payments.

60.     Subsequent to the entry of this Consent Order, Defendant and Relief Defendant Sand Dollar shall provide the CFTC and the Receiver with immediate notice of any filing or compromise and settlement of any private or governmental

actions relating to the subject matter of this Consent Order in the manner required by Section VI. paragraph 73 of this Consent Order.

61.    To effect payment of Defendant's remaining disgorgement obligation after the termination of the receivership (to the extent such disgorgement obligation has not already been satisfied) and to effectuate the distribution of any disgorgement paid by Defendant after the termination of the Receiver's duties, the Court appoints the National Futures Association (NFA) as Monitor, to be effective immediately upon any order entered by this Court terminating the Receiver's duties.  The Monitor shall collect disgorgement payments from Defendant and make distributions as set forth below.  Because the Monitor is not being specially compensated for these services, and these services are outside the normal duties of the Monitor, NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

62.    Defendant shall make any required disgorgement payments to the Monitor the name of "Healy Disgorgement Fund" and shall send such disgorgement payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover of a letter that identifies Sean Healy as

the payer, the name, and Docket number of this action and the name of this Court. Defendant shall simultaneously transmit copies of the cover letter and form of payment to: (a) the Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581; and (b) the Chief, Office of Cooperative Enforcement, Division of Enforcement, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

63.     The Monitor shall distribute funds to the investors identified by the Receiver in an equitable manner as determined by the Monitor. The Monitor shall oversee the distribution of funds of the disgorgement obligation and shall have the discretion to defer distribution until such time as it may deem appropriate. In the event that the amount of disgorgement payments made by Defendant to the Monitor are of a de minimis nature, such that the Monitor determines that the administrative costs of the making a distribution to investors is impractical, the Monitor may, in its discretion, treat such disgorgement payments as civil monetary penalty payments, which the Monitor shall forward to the CFTC following the instructions for the civil monetary penalty obligation as set forth below.

64.     To the extent that any funds accrue to the U.S. Treasury as a result of Defendant's disgorgement obligation, such funds shall be transferred to the

Monitor for disbursement in accordance with the procedures set forth in the preceding paragraph.

## C.    Civil Monetary Penalty

65.    Defendant shall pay a civil monetary penalty in the amount of $14,637,000, plus post-judgment interest.

66.    Post-judgment interest shall accrue beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order, pursuant to 28 U.S.C. § 1961(a).

67.    Defendant's civil monetary penalty is immediately due and owing upon entry of this Consent Order.

68.    Defendant shall pay his civil monetary penalty by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, the payment shall be made payable to the CFTC and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> Attn:  Marie Bateman – AMZ-300
> DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169

(405) 954-6569

If payment is to be made by electronic funds transfer, the Defendant shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. The Defendant shall accompany payment of the penalty with a cover letter that identifies the Defendant and the name and docket number of this proceeding. The Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Director, Division of Enforcement, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1151 21st Street, NW, Washington, DC 20581, and the Chief, Office of Cooperative Enforcement, at the same address.

**D.     Priority of Monetary Sanctions and Partial Payments**

69.     All payments by Defendant and Relief Defendant Sand Dollar pursuant to this Consent Order shall first be applied to satisfaction of the disgorgement obligation, consistent with the authority granted the Receiver in Part V.A., above and the Monitor in Part V.B., above. After satisfaction of the disgorgement obligation, any further payments by Defendant pursuant to this Consent Order shall be applied to satisfy Defendant's civil monetary penalty obligation.

70.     Any acceptance by the CFTC, Receiver, and/or Monitor of partial payment of the disgorgement obligation and/or civil monetary penalty shall not be deemed a waiver of Defendant's or Relief Defendant Sand Dollar's requirements to make further payments pursuant to this Consent Order or a waiver of the CFTC's and/or Receiver's right to seek to compel payment of any remaining balance.

## VI.

## MISCELLANEOUS PROVISIONS

## IT IS FURTHER ORDERED THAT:

71.     The equitable relief provisions of this Consent Order shall be binding upon Defendant and Relief Defendant Sand Dollar and any person who is acting in the capacity of officer, agent, employee, servant, or attorney of Defendant or Relief Defendant Sand Dollar, and any person acting in active concert or participation with Defendant or Relief Defendant Sand Dollar who receives actual notice of this Consent Order by personal service or otherwise.

72.     Notice:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to CFTC:

        Division of Enforcement
        U.S. Commodity Futures Trading Commission
        Two Emanuel Cleaver II Blvd. Suite 300
        Kansas City, MO 64112-1764

Notice to Defendant Sean Healy:

        Jeffrey L. Cox, Esq.
        SALLAH & COX, LLC
        Boca Corporate Center, Suite 218
        2101 NW Corporate Boulevard
        Boca Raton, Florida  33431
        (561) 989-9080
        (561) 989-9020 (FAX)

Notice to Relief Defendant Sand Dollar:

        Melanie Damian, Receiver for Sand Dollar Investing Partners, LLC
        Damian & Valori, LLP
        1000 Brickell Avenue, Suite 1020
        Miami, Florida 33131
        305-371-3960 (office)
        305-371-3965 (fax)

All such notices to the CFTC and the Receiver shall reference the name and docket

number of this action.

      73.    Change of Address/Phone:  In the event that Defendant or

Relief Defendant Sand Dollar changes telephone number(s) and/or

address(es) at any time, such Defendant or Relief Defendant shall provide

written notice of the new number(s) and/or address(es) to the CFTC within ten (10) calendar days thereof.

74. Entire Agreement and Amendments: This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

75. Invalidation: If any provision of this Consent Order or if the application of any provisions or circumstances is held invalid, the remainder of the Consent Order and the application of the provisions to any other person or circumstance shall not be affected by the holding.

76. Waiver: The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

77.    Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this case to assure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendant or Relief Defendants to modify or for relief from the terms of this Consent Order.

78.    Authority:  Melanie E. Damian, Esq., as Receiver appointed pursuant to this Court's July 13, 2009 Order, is authorized, empowered, and directed to sign and submit this Consent Order on behalf of Sand Dollar.

79.    Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered (by facsimile or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this agreement that is delivered by facsimile or otherwise shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

**SO ORDERED**, this 22ⁿᵈ day of _June_ , 2010, at Harrisburg,

Pennsylvania

CHRISTOPHER C. CONNER
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF PENNSYLVANIA

_(signature)_

Sean N. Healy
Defendant

Date: March 2 3, 2010

_(signature)_

Jeffrey L. Cox, Esq.
Boca Corporate Center, Ste. 218
2101 NW Corporate Blvd
Boca Raton, Florida 33431

Attorney for Defendant
Sean N. Healy

Date: March 15, 2010

_(signature)_

Charles D. Marvine
Missouri Bar No. 44906
Braden M. Perry
Missouri Bar No. 53865
U.S. Commodity Futures Trading
Commission
Division of Enforcement
Two Emanuel Cleaver II Blvd.,
Ste. 300
Kansas City, MO 64112
Tel.: (816) 960-7743 (Marvine)
Tel.: (816) 960-7712 (Perry)
Fax: (816) 960-7750
cmarvine@cftc.gov
bperry@cftc.gov

Date: ~~March~~ June 18, 2010

_____

Sand Dollar Investing Partners,
LLC

By Melanie E. Damian, Receiver
for Sand Dollar Investing
Partners, LLC

Date: March____, 2010

Sean N. Healy
Defendant

Date: March _____, 2010


Jeffrey L. Cox, Esq.
Boca Corporate Center, Ste. 218
2101 NW Corporate Blvd
Boca Raton, Florida 33431

Attorney for Defendant
Sean N. Healy

Date: March _____, 2010

Sand Dollar Investing Partners,
LLC

By Melanie E. Damian, Receiver
for Sand Dollar Investing
Partners, LLC

Date: March 14, 2010

Charles D. Marvine
Missouri Bar No. 44906
Braden M. Perry
Missouri Bar No. 53865
U.S. Commodity Futures Trading
Commission
Division of Enforcement
Two Emanuel Cleaver II Blvd.,
Ste. 300
Kansas City, MO 64112
Tel.: (816) 960-7743 (Marvine)
Tel.: (816) 960-7712 (Perry)
Fax: (816) 960-7750
cmarvine@cftc.gov
bperry@cftc.gov

Date: March _____, 2010